Peck, J.
delivered the opinion of the court.
The charge is, “that Sterling Whittemore, Isaac H. Howiett, David Watson and one other, late of the county aforesaid, with force and arms, at the county aforesaid, upon the first day of November, in the year of our Lord, 1832, did encourage and promote a certain unlawful game and match at cards, for two waistcoat patterns, which said waistcoat patterns were of the value of 37 1-2 cents each; and then and there did play for and bet said waistcoat patterns at said game of cards.”
The jury found a special verdict, “that the defendant played cards with two others, but he did not bet or play for money or other valuable thing himself, but he knew that two others of the persons who were playing, did bet for two waistcoat patterns, which were then and there valuable things. Now, if the law upon this state of facts be in favor of the State, they find the defendant guilty. But, if it be in favor of the defendant, they find him not *151 guilty. ” Upon this finding, the court gave judgment for the State. Writ of error to this court.
It is insisted, that this, if to he taken as an offence, is covered by the act of 1799, ch. 8, sec. 2, and by no other; and this section providing for the punishment by a fine of $5, in summary proceedings before a justice of the peace, the circuit court had no jurisdiction of the offence in this form; that if jurisdiction be given to the circuit court by the act of 1817, ch. 61, sec. 2, by these words, “and all offences against the laws enacted to suppress gaming are hereby declared cognizable in the circuit courts,” that it must be exercised as if before a justice under the first mentioned act of 1799, by an action qui tam for the penalty.
To answer this argument, it is only necessary to repeat what the court has had occasion often to say upon cases brought before us for the offence of gaming, that all the acts passed upon the subject, are to be taken together as one law; seeming discordances are to be reconciled, and the law, if possible, construed so as to stand and be consistent with the duty to he performed by the court. The fourth section of the act of 1817, contemplates an indictment; but the act of 1824, ch. 5, sec. 2, by the very words, makes all offences “of unlawful gaming indictable.” The language is, “it shall be the duty of all grand juries to make diligent enquiry concerning all offences of unlawful gaming, may send for witnesses, and cause them to give evidence of such offence or offences as may he known to him or them, against any of the statutes of this State to suppress and prevent gaming.”
After a general jurisdiction is given to a court, (not a judge or justice,) the enquiry naturally follows, how shall it be exercised? On this point the law and constitution stand together; the' inquisition and the jury trial follow as a consequence; a grand jury is not only an auxiliary to the court in making enquiry, but is supposed *152 t0 come with the evidence of offences in its own body, and by presentment bring the offence to the notice of the court.
If the judge, sitting as a court, had exercised a summary jurisdiction touching this offence, it certainly would have been objected, that the judge in his seat had not been transformed into a justice to issue his warrant, hear and weigh the evidence, draw conclusions, and make up a summary conviction, as an appeal would lie from a judgment if given by a justice under the act of 1799, and a jury trial follow as a consequence. To whom would the appeal lie, if the judge-holding the circuit court had given the judgment? A writ of error might lie to this court upon the conviction, but the jury trial wotdd be taken away: and it is equally clear, that if the action qui tam was'intended to be given, that express words were necessary to have created the transfer of forum; for we hold it to be law, that, express provision is necessary to give jurisdiction, and even if inference could be applied, it would be unnatural to suppose that there had been a change of forum to accommodate either the informer or the promoter of gaming, and that the time of the court should be occupied in gravely trying actions of debt under a penal statute where the State, if she succeed, gains $2 50; but if she loose, pays in costs ten times the sum, if the informer should prove insolvent.
Having heretofore held that these acts, as they provide, shall be construed as remedial statutes to suppress the 'offence, we will not abandon that resolution; and there is enough in the language of them to entertain the indictment without strained construction. He who plays, is self .tempted into the- debauch, • and if innocent of the betting, it is still a crime if countenance be given to such as may.
In the case of the State.vs. Smith and Lane, determined in this court, (2 Yerger’s Rep. 273,) the very point is settled; a majority of the court say, “it is insis- *153 tea that those who encourage and promote gaming, are not subject to indictment under the act of 1803. This is clearly a mistake, for two reasons. Let us put a case: say four persons set down to play loo; one of the parties bets nothing himself, hut plays for another: here he who plays encourages the match without betting. To adopt the construction contended for, neither are indictable; still in point of fact, both are guilty of gaming. In offences inferior to felony, there are no accessaries; all concerned are principals.” On examination the indictment in that case is in the very words used in the one before us. So too the finding, which is special, is substantially the same.
As far as this part of the case of Smith and Lane goes, there was no dissent in opinion; and it is even possible (as to the balance) that the dissenting member, had he understood the mysteries of this occult act, might have seen how the holder of an undrawn and consequently blank lottery ticket, was a gambler, or at least promoter of a match or game against the statute, though he knew none of the others concerned.
There is no error in the judgment of the court.
Judgment affirmed.